UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA J. CASTRO JIMINEZ, ) | Case No. EDCV 09-595 JC |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

**I.   SUMMARY**

On April 3, 2009, plaintiff Sandra J. Castro Jiminez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; April 10, 2009 Case Management Order ¶ 5.

///

///

1  Based on the record as a whole and the applicable law, the decision of the
Commissioner is AFFIRMED. The findings of the Administrative Law Judge
("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 10, 2004, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits. (Administrative Record ("AR") 12, 226). Plaintiff asserted that she became disabled on May 19, 2003 due to major depression. (AR 12, 68-69, 209, 226). The ALJ examined the medical record and heard testimony from a medical expert, a vocational expert, and plaintiff (who was represented by counsel) on October 24, 2006 ("Pre-Remand Hearing"). (AR 191-210, 367-85).

On November 6, 2006, the ALJ determined that plaintiff was not disabled through the date of the decision ("Pre-Remand Decision"). (AR 12-18, 226-32). The Appeals Council denied plaintiff's application for review of the ALJ's Pre-Remand Decision. (AR 4-6, 251-53).

On June 13, 2008, in Case No. EDCV 07-756 JTL, a judgment was entered in the United States District Court for the Central District of California, reversing and remanding the case for further proceedings because the ALJ failed to give proper consideration to plaintiff's age at step five of the sequential evaluation process. (AR 243-45). The Appeals Council, in turn, remanded the case for a new hearing. (AR 249). On October 10, 2008, the ALJ held a post-remand hearing

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

("Post-Remand Hearing") during which the ALJ heard testimony from a vocational expert. (AR 358-66).

On January 5, 2009, the ALJ issued his decision, incorporating by reference the Pre-Remand Decision, and supplementing such decision. (AR 214-22). The ALJ again determined that plaintiff was not disabled through the date of the decision ("Post-Remand Decision"). (AR 214-22). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairment: an affective disorder (AR 216); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 216-17); (3) plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations (AR 217);[2] (4) plaintiff could not perform her past relevant work as a dock worker (AR 221); and (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 221).

## III.  APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any

---

[2] Specifically, the ALJ determined that plaintiff (i) could only perform tasks involving up to three or four steps of instructions that are not fast paced (*i.e.*, assembly line) and are in a habituated setting; (ii) could not work in an environment with emotionally charged personal interactions; (iii) could not work around hazardous machinery such as a forklift; (iv) could not be responsible for safety operations; and (v) could speak English, but could only read and write simple words in English. (AR 217).

other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

///

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.   DISCUSSION**

**A.     The ALJ Properly Evaluated the Medical Evidence**

Plaintiff contends that a reversal or remand is required because the ALJ failed adequately to evaluate the medical evidence. (Plaintiff's Motion at 3-7). More specifically, plaintiff claims that the ALJ (1) failed to account for limitations from plaintiff's severe chronic fatigue in assessing her residual functional capacity (Plaintiff's Motion at 3); (2) ignored very low global assessment of functioning ("GAF") ratings[3] assigned by health care providers at the San Bernardino County

---

[3]A GAF score is a clinician's judgment of an individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard
(continued...)

1  Department of Behavioral Health ("SBCDBH") (Plaintiff's Motion at 3-4);
2  (3) ignored the opinions of a state agency reviewing psychiatrist as to limitations
3  in plaintiff's mental functioning (Plaintiff's Motion at 5) (citing AR 163, 168-70);
4  and (4) improperly rejected the opinions of Dr. Marissa Mejia ("Dr. Mejia"), a
5  treating psychiatrist. (Plaintiff's Motion at 6-7).

### 1. Plaintiff's Subjective Complaints of Fatigue

Reversal or remand is not warranted due to the ALJ's failure to discuss plaintiff's complaints of fatigue. The only evidence plaintiff points to of such fatigue is plaintiff's own complaints to her treating physician. (Plaintiff's Motion at 3) (citing AR 124, 126, 129, 131, 133, 145, 179, 183, 184-85). Generally, proof of disability requires evidence of both medical signs *and* subjective symptoms.[4] Plaintiff's subjective symptoms of fatigue alone are insufficient to establish a medically determinable physical impairment. See Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (citation omitted) ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone."); SSR 96-4p, 1996 WL 374187, at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be

---

(...continued)
to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

[4] A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov, 420 F.3d at 1005 (quoting Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 n.2). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2); see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).

established in the absence of objective medical abnormalities; *i.e.*, medical signs and laboratory findings."). Therefore, the ALJ was not required to consider plaintiff's subjective complaints of fatigue at any level of the sequential evaluation process. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.") (citation omitted).

### 2.     GAF Scores

Any failure to address GAF scores noted in plaintiff's SBCDBH medical records does not constitute legal error. GAF scores, standing alone, are not determinative of mental disability for purposes of social security claims. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error);[5] see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity).

### 3.     State Agency Reviewing Psychiatrist

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely

---

[5]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a)).

those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6] See id.

"The Commissioner may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998). However, while "not bound by findings made by State agency or other program physicians and psychologists, [the ALJ] may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p; see also 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence. . . ."); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to consider as opinion evidence the findings of state agency medical consultants; the ALJ is also required to explain in his decision the weight given to such opinions.").[7]

///

---

[6] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

[7] As noted above, the Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

Here, contrary to plaintiff's suggestion, the ALJ adequately considered the opinions of the state agency psychiatrist, Dr. H. Amado ("Dr. Amado") and, to the extent he rejected such opinions, did so based on specific evidence in the medical record. The ALJ discussed at length Dr. Amado's narrative findings as to plaintiff's mental limitations. (AR 229-230) (citing Exhibit 3F [AR 165-67]). As the ALJ noted, Dr. Amado found that plaintiff had mild to moderate limitation in concentration and memory, moderate limitation in the ability to function, and difficulty paying attention, following instructions and completing tasks, but also determined that when properly taking her medication, plaintiff retained the basic ability to care for herself and her dogs, carry out light housework, drive a car, go out on her own, shop in public and pay bills. (AR 165-66, 229-230). Dr. Amado ultimately concluded that plaintiff could "sustain simple repetitive tasks with adequate pace and persistence," and could "adapt and relate to coworkers and [supervisors], but could not work with the public. (AR 170). The ALJ made clear that he had considered Dr. Amado's opinions and resolved any conflicts with the medical evidence in part by adopting the opinions of Dr. Malancharuvil, the testifying medical expert, which opinions the ALJ noted "[took] account of the various [medical] recommendations." (AR 230).

While plaintiff claims that Dr. Amado's assessed limitations "clearly exceeded" those found by Dr. Malancharuvil, the record reflects otherwise. Both Dr. Amado and Dr. Malancharuvil opined that symptoms from plaintiff's mental impairment were well managed with medication. (AR 165, 201, 230). Moreover, like Dr. Amado, Dr. Malancharuvil testified that in light of the medical record and plaintiff's testimony, plaintiff remained able to do work involving simple tasks of up to three or four steps of instructions in a habituated setting, with no demand for emotionally charged interactions, no fast-paced work, and should avoid hazardous machinery and not be in charge of safety operations. (AR 201-02, 230). As the ALJ noted, Dr. Malancharuvil's findings were "consistent with the medical record,

[and] based on objective medical evidence." (AR 230). Plaintiff fails to demonstrate that Dr. Amado's opinions as to plaintiff's abilities materially differ from such findings. The ALJ was not required to discuss at length medical opinion evidence from Dr. Amado which he did not reject and was encompassed by the ALJ's assessment of plaintiff's residual functional capacity based upon the well supported opinions of the testifying medical expert. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). An ALJ must provide an explanation only when he rejects "significant probative evidence." Vincent, 739 F.2d at 1394-95 (citation omitted).

To the extent the ALJ rejected any conflicting summary conclusions reached by Dr. Amado (AR 163, 168-69), he properly did so based on specific evidence in the medical record. First, the ALJ could properly rely on Dr. Amado's narrative interpretation of his findings, rather than the underlying, check-the-box summary conclusions, and resolve any ambiguity between the two. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (ALJ resolves conflicts and ambiguities in the evidence); Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ must "fully account[] for the context of materials or all parts of the testimony and reports"); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). Moreover, the ALJ noted discrepancies between plaintiff's allegations and her record mental status examinations, and also noted that "most assessments in the medical record are based on plaintiff's subjective complaints and self-reporting." (AR 230). The ALJ properly discounted any conflicting findings by Dr. Amado on such grounds. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly rejected opinion of treating physician which was based solely on subjective complaints of claimant and information submitted by claimant's family and friends). The ALJ also noted that plaintiff's mental health treatment notes indicated that any limitations from plaintiff's mental condition were "manageable

within the assessed mental residual functional capacity." (AR 230). In short, the ALJ's detailed and exhaustive discussion and evaluation of plaintiff's treatment records and the medical opinion evidence adequately supported rejecting any of Dr. Amado's conflicting opinions. See Sawyer, 303 Fed. Appx. at 455; cf. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden of rejecting a treating physician's opinion by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes v. Bowen, 881 F.2d 747, 751, 755 (9th Cir. 1989) (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

Accordingly, reversal or remand is not warranted on this basis.

**4. Dr. Mejia**

Plaintiff claims that the ALJ improperly rejected Dr. Mejia's opinions as to plaintiff's abilities. (Plaintiff's Motion at 6) (citing AR 354-57). This Court disagrees.

**a. Pertinent Facts**

On August 4, 2008, Dr. Mejia completed a Medical Opinion re: Ability to do Work-Related Activities (Mental), which plaintiff submitted in connection with the Post-Remand Hearing. Dr. Mejia opined, in pertinent part, that plaintiff was completely unable to (i) maintain attention for a two hour segment; (ii) maintain regular attendance and be punctual within customary, usually strict tolerances; (iii) complete a normal workday and workweek without interruptions from psychologically based symptoms; (iv) perform at a consistent pace without an unreasonable number and length of rest periods; (v) accept instructions and respond appropriately to criticism from supervisors; (vi) deal with normal work stress; (vii) understand and remember detailed instructions, (viii) interact appropriately with the general public, (ix) travel in unfamiliar place[s]; and

(x) use public transportation. (AR 354-57). Dr. Mejia also stated that she would expect plaintiff to be absent from work about four days per month due to plaintiff's mental impairments. (AR 357).

### b. Pertinent Law

A treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas, 278 F.3d at 957 (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### c. Analysis

The ALJ properly rejected Dr. Mejia's opinions for specific and legitimate reasons supported by substantial evidence.

First, an ALJ may properly reject a medical opinion that conflicts with the physician's own treatment notes or the record as a whole. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected

where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). Here, as the ALJ noted, Dr. Mejia's opinions that plaintiff suffered significant cognitive limitations conflicted with Dr. Mejia's own treatment notes which reflect that plaintiff had received routine outpatient treatment for a depressive disorder, had successfully recovered from hospitalization for an "acute mental health crisis in June 2007" and "situational depression" due to her mother's death in December 2008, and had otherwise done well when taking her prescribed medication. (AR 219-20, 281-301, 319-23, 328-33, 335-44, 349-50, 352-53). Dr. Mejia's July 2007 treatment notes reflect that, shortly after plaintiff was released from the hospital, plaintiff was "feeling well" on her medication, and on mental status examination was "calm, happy, full affect, coherent, with no racing thoughts." (AR 220, 337). October and December 2007 treatment notes reflect that plaintiff was again "doing well" on medication, and had similar findings on mental status examinations. (AR 220, 342-43).

Second, as the ALJ noted, treatment records reflect that plaintiff experienced significant symptoms mostly when she failed to take her prescribed medication. (AR 219-20, 328, 335-36, 350). To the extent Dr. Mejia's opinions are based on plaintiff's symptoms during periods when plaintiff failed to take her prescription medication, such opinions cannot support a disability finding. A claimant who would otherwise be found disabled within the meaning of the Social Security Act may be denied benefits if she fails to follow prescribed treatment without justifiable cause.[8] See Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir.

---

[8] In briefing plaintiff's attorney speculates that plaintiff's noncompliance with medication "appears [to be] . . . more a symptom of [plaintiff's] underlying psychiatric problem than a volitional act on her part." (Plaintiff's Motion at 7). Such speculation is insufficient to demonstrate a "justifiable cause" for plaintiff's failure to take her prescribed medication.

13

1995), cert. denied, 517 U.S. 1122 (1996); SSR 82-59; 20 C.F.R. §§ 404.1530, 416.930; see also Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted).

Finally, as discussed above, Dr. Malancharuvil's opinions were consistent with the other substantial medical evidence of record, and therefore constitute substantial evidence supporting the ALJ's decision to reject Dr. Mejia's conflicting opinions. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); see also Andrews, 53 F.3d at 1041 (Any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve.).

Accordingly, reversal or remand is not warranted on this basis.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

///

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 8-10). The Court disagrees.

First, the Court rejects plaintiff's suggestion that the ALJ's credibility determination failed sufficiently to consider plaintiff's subjective complaints. In the Pre-Remand Decision, the ALJ expressly acknowledged that plaintiff complained of "depression" and that she "fe[lt] like crying sometimes," and "forg[ot] things such as taking her medications, medical appointments, and her mother's phone number." (AR 15, 229). The ALJ was not required to discuss every piece of cumulative evidence regarding plaintiff's symptoms. See Howard, 341 F.3d at 1012; Black v. Apfel, 143 F.3d 383, 386 (9th Cir. 1998) (citation omitted). In addition, to the extent the ALJ failed to consider the credibility of plaintiff's subjective complaints of fatigue, as discussed above, such complaints were not significant probative evidence that the ALJ was required to consider at all. With respect to plaintiff's general allegation that the ALJ ignored unspecified "subjective statements that appear . . . at AR 68-69, 81-88, 93 and 97," any claim of error based on such conclusory pleading does not merit relief. Cf. Carmickle, 533 F.3d at 1161 n.2 (courts "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief") (citation and internal quotation marks omitted).

Second, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, the ALJ noted that in spite of her alleged mental condition, plaintiff had still managed "to care for herself, look after her dogs, carry

out light household chores, drive a vehicle, go out on her own, shop in public places, [] pay bills," and even start a new job. (AR 15, 220, 229). While plaintiff contends that such activities are not "evidence of her ability to sustain full time competitive employment," this Court will not second-guess the ALJ's reasonable interpretation that they are, even if such evidence could give rise to inferences more favorable to plaintiff.

Third, an ALJ may properly consider a plaintiff's failure to "seek treatment or to follow a prescribed course of treatment" in assessing her credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, as the ALJ noted, treatment records reflect plaintiff's "poor compliance" with taking prescribed medication. (AR 15, 220, 229; see AR 328 [plaintiff "hasn't been taking Prozac as instructed"], 335 [plaintiff "came as a walk in, out of meds"], 350 [plaintiff experienced increased symptoms "when she ran out" of medication]). While an ALJ may not reject symptom testimony where a claimant provides "evidence of a good reason for not taking medication," Smolen, 80 F.3d at 1284 (citations omitted), as noted above, plaintiff has failed to present such a sufficient reason.

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, the ALJ reasonably concluded that plaintiff's subjective symptoms did not limit plaintiff's ability to work since they were sufficiently managed by plaintiff's medication. (AR 220-21).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.
///
///

## C. The ALJ's Findings at Step Five of the Sequential Evaluation Process Were Free of Material Error

Plaintiff contends that the ALJ erred at step five because he (1) failed properly to consider plaintiff's age at the time of her alleged onset and at the time of the Post-Remand Decision (*i.e.* 56 years and 62 years, respectively); and (2) failed properly to consider the degree of vocational adjustment required for plaintiff to transition to other jobs in the national economy. (Plaintiff's Motion at 10-15). Plaintiff's claims are meritless.[9]

First, as noted above, the Pre-Remand Decision was reversed and remanded because the ALJ "failed to give proper consideration to plaintiff's age before determining that she is capable of making a successful adjustment to other work in the national economy." (AR 243). More specifically, the Court noted that the hypothetical questions posed to the vocational expert at the Pre-Remand Hearing "contained no reference whatsoever to plaintiff's age," and therefore the ALJ's conclusion in the Pre-Remand Decision that plaintiff was not disabled at step five lacked substantial evidence. (AR 243-44). On remand, however, the ALJ corrected such error. At the Post-Remand Hearing, the ALJ expressly asked the vocational expert whether plaintiff's age would impact the availability of other work in the national economy, and the vocational expert said it would not. (AR 362-63). In the Post-Remand Decision, the ALJ specifically relied on the vocational expert's testimony in finding plaintiff "not disabled" at step five. (AR 218-19, 222). The vocational expert's testimony constituted substantial evidence

---

[9]Plaintiff also contends that the ALJ erred when he concluded that plaintiff – who is "in her 60s" and "[o]bviously . . . not capable of lifting 100 to 150 pounds in a competitive work environment" – was capable of performing work at any exertional level, including "very heavy work." (Plaintiff's Motion at 10). Such argument is meritless as well. Plaintiff bears the burden to prove disability, yet presented no substantial evidence of a medically determinable physical impairment that would limit plaintiff's ability to work. Accordingly, the ALJ reasonably concluded that plaintiff could perform work at all exertional levels. See Burch, 400 F.3d at 679; 42 U.S.C. § 423(d)(1)(A).

1  of plaintiff's ability to perform work which exists in significant numbers in the
2  national economy.  See Tackett, 180 F.3d at 1101.
3        Second, plaintiff also contends that the ALJ erred by concluding at step five
4  that he was not required to consider plaintiff's age, education and skill level of
5  prior work experience when determining the degree of vocational adjustment
6  necessary for plaintiff to transition from her past relevant work to other unskilled
7  jobs available in the national economy.  (Plaintiff's Motion at 10-15).  Citing no
8  legal authority, plaintiff argues that "[a]n analysis of the degree of vocational
9  adjustment that is necessary when an individual is transitioning from one
10 occupation to another cannot and is not solely determined . . . by the skill level
11 required," and thus that the vocational expert erred by suggesting that no
12 adjustment would be needed for plaintiff to transition from her prior job to a
13 different unskilled job.  (Plaintiff's Motion at 14).  Here, assuming, *arguendo*, that
14 the ALJ was required to consider the impact of plaintiff's age on her ability to
15 adjust to a different unskilled job, there was no error as the ALJ did just that.  At
16 the Post-Remand Hearing the ALJ asked the vocational expert whether plaintiff's
17 age would impact the number of jobs the vocational expert had identified at the
18 Pre-Remand Hearing as being available to plaintiff and/or the amount of
19 vocational adjustment necessary for plaintiff to perform such jobs.  (AR 362-63).
20 The vocational expert testified that, considering plaintiff's age "there would [not]
21 be a significant impact with respect to availability [of jobs]" and that there would
22 be "little or no vocational adjustment" for plaintiff.  (AR 362-63).  The Court will
23 not second-guess the ALJ's reasonable reliance on the vocational expert's
24 testimony at step five.
25       Accordingly, plaintiff is not entitled to a reversal or remand on this basis.
26 ///
27 ///
28 ///

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 24, 2010

                                                /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE